UNITED STATES of America, Appellee,

v.

Turner Lee DURHAM, Appellant.

No. 8857.

United States Court of Appeals Fourth Circuit.

Argued March 25, 1963.

Decided June 4, 1963.

Harrell Powell, Jr., Winston-Salem, N. C. (Court-assigned counsel), for appellant.

William H. Murdock, U. S. Atty (Henry E. Frye, Asst. U. S. Atty., on brief), for appellee.

Before BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges.

BOREMAN, Circuit Judge.

Defendant below, Turner Lee Durham, appeals from his conviction in the United States District Court for the Middle District of North Carolina for violation of 18 U.S.C. § 2312.[1] The conviction will be affirmed.

Durham and one Henry Morris Tolbert were indicted for transporting a 1951 Mercury automobile from Winston-Salem, North Carolina, to Myrtle Beach, South Carolina, on or about July 14, 1962, knowing that the vehicle had been stolen. In a separate count of the same indictment, Thomas Allen Wingo and Larry Wayne Utt were charged with similarly transporting a 1959 Austin Healy automobile from Winston-Salem to Myrtle Beach on or about the same date. Shortly before the jury was impaneled to try the case, Wingo changed his plea from not guilty to guilty. Durham, Tolbert and Utt entered pleas of not guilty. At the close of the Government's evidence, motions for judgments of acquittal were granted as to defendants Utt and Tolbert. Durham did not testify and called no witnesses. The jury found Durham guilty and he was sentenced to a term of imprisonment.

Durham's sole contention on appeal is that the District Court committed reversible error in permitting the United States Attorney to ask Wingo, who testified for the Government, leading questions. In summary the facts, as stated by Wingo in his testimony, are these. Wingo had worked as an offset pressman for the Atlas Supply Company where he had access to some blank checks imprinted with the name of its subsidiary, the Mercury Distributing Company. He became acquainted with defendant Durham in the spring of 1962 and later stole several hundred of the Mercury Distributing Company checks. On July 10, 1962, Durham, Wingo, Tolbert and man named Brown drove to Charlotte, North Carolina. Either while traveling to Charlotte or after arriving there, Wingo forged one of the stolen checks in the amount of $3,926.34, payable to the order of Jack Johnson (a fictitious name). Wingo then used this check to open a checking account at the Bank of Charlotte in the name of Jack Johson. Wingo testified that he wrote the forged check in the presence of Durham and that Durham accompanied him to the bank, but he was unable to recall whether the check was written in the car or in the bank and he did not know Durham's exact location in the bank at the time he opened the account. Subsequently, while still in Charlotte, Wingo and Durham at-

1. 18 U.S.C. § 2312 reads as follows:
"§ 2312. Transportation of stolen vehicles
"Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

tempted to negotiate checks drawn on the account in the name of Jack Johnson.

A day or so later, after their return to Winston-Salem, Durham and Wingo purchased a 1951 Mercury at a used car lot where Durham had formerly worked. Durham made out a check, drawn on the Bank of Charlotte in the amount of $200.00, and Wingo signed the name Jack Johnson as maker. The bill of sale for the Mercury was made out to Durham. Later that afternoon, Durham and Wingo returned to the used car lot and purchased a 1959 Austin Healy Sprite for which Wingo traded in his Plymouth and gave a check in the amount of $750.-00, again drawn on the Bank of Charlotte and signed "Jack Johnson." Early the next morning Durham and Tolbert drove the 1951 Mercury and Wingo and Utt drove the Austin Healy from Winston-Salem to Myrtle Beach, South Carolina, where all four were subsequently arrested.

■ Durham's defense was based on the theory that he did not have knowledge that the automobile was stolen,[2] an essential element of the crime charged. Durham's counsel argued to the jury and here contends that Durham did not know the bogus checks were worthless and that he did not know Wingo's correct name. Durham contends that it was reversible error for the District Court to allow the United States Attorney to ask Wingo the following questions on the ground that they were leading:

QUESTION ONE: "Didn't you testify he [Durham] was in the bank with you at the time this account was opened?"

QUESTION TWO: "When you [he ?] knew your name was Wingo, you were using a false name?"

QUESTION THREE: "You say you all planned this together?"

QUESTION FOUR: "You say you all planned this, and they had asked you to write this check which was deposited in the Bank of Charlotte?"

■ The essential test of a leading question is whether it so suggests to the witness the specific tenor of the reply desired by counsel that such a reply is likely to be given irrespective of an actual memory. The evil to be avoided is that of supplying a false memory for the witness. 3 Wigmore, Evidence § 769 (3d ed. 1940); see also De Witt v. Skinner, 232 F. 443, 445 (8th Cir. 1916). However, the extent to which the use of leading questions may be indulged or limited is a matter primarily for the discretion of the trial judge and an appellate court will intervene only if there is a clear abuse of discretion.[3] Generally, abuse of discretion is not found in the absence of prejudice or clear injustice to the defendant.[4]

2. Obtaining an automobile by means of false pretenses, such as by use of a bogus check, renders the automobile "stolen" within the meaning of 18 U.S.C. § 2312. United States v. Oates, 314 F.2d 593 (4th Cir. 1963); Scott v. United States, 255 F.2d 18 (4th Cir. 1958), cert. denied, 357 U.S. 942, 78 S.Ct. 1392, 2 L.Ed.2d 1555.

3. Northern Pacific Railroad v. Urlin, 158 U.S. 271, 273, 15 S.Ct. 840, 39 L.Ed. 977 (1895); St. Clair v. United States, 154 U.S. 134, 150, 14 S.Ct. 1002, 38 L.Ed. 936 (1894); City-Wide Trucking Corporation v. Ford, 113 U.S.App.D.C. 198, 306 F.2d 805, 807 (D.C.Cir. 1962); Mitchell v. United States, 213 F.2d 951, 956 (9th Cir. 1954), cert. denied, 348 U.S. 912, 75 S.Ct. 290, 99 L.Ed. 715 (1955); Stahl v. United States, 144 F.2d 909, 912 (8th Cir. 1944); United

States v. Montgomery, 126 F.2d 151, 153 (3d Cir. 1942), cert. denied, 316 U.S. 681, 62 S.Ct. 1268, 86 L.Ed. 1764; Wagman v. United States, 269 F. 568, 573 (6th Cir. 1920), cert. denied, 255 U.S. 572, 41 S.Ct. 376, 65 L.Ed. 792 (1921); Linn v. United States, 251 F. 476, 482 (2d Cir. 1918); 3 Wigmore, Evidence §§ 770-79 (3d ed. 1940).

4. See, e. g., City-Wide Trucking Corporation v. Ford, supra footnote 3; Roberson v. United States, 249 F.2d 737, 742 (5th Cir. 1957), cert. denied, 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958); Thomas v. United States, 227 F.2d 667, 671 (9th Cir. 1955), cert. denied, 350 U.S. 911, 76 S.Ct. 194, 100 L.Ed. 799; Stahl v. United States, supra footnote 3; Rainey v. Potter, 120 F. 651, 655 (2d Cir. 1903).

It is Durham's argument that by asking the four questions noted above, the United States Attorney put answers necessary to establish the Government's case in the mouth of a witness who had shown himself to be uncertain about those very facts; since the questions tended to show that Durham had known Wingo's correct name and had knowingly participated in the scheme to obtain money by false pretenses, they tended to rebut his defense of lack of knowledge that the car was stolen. Also, it is argued, since Wingo had plead guilty but had not then been sentenced, his desire to please the United States Attorney can be assumed and should be taken into account. Therefore, Durham contends, the district judge abused his discretion by allowing questions which were leading and resulted in prejudice to Durham. The Government does not make any claim that it was faced with a special situation, such as surprise due to the change of testimony by a witness, the need to refresh the memory of a witness, the hostile attitude of a witness, or the need to make specific points in rebuttal. The Government asserts merely that the questions were not leading and contends that no prejudice to Durham and no abuse of discretion could arise because each of the specific questions of which Durham complains tended merely to corroborate facts previously presented in Wingo's testimony. A review of Wingo's testimony shows that this contention of the Government is well supported by the record.

Prior to Question One, propounded by the United States Attorney on direct examination, Wingo testified that he had opened a checking account with the Bank of Charlotte using the fictitious name of Jack Johnson, and that Durham was with him at the time. Later, on cross-examination by Durham's counsel, the witness repeated this testimony and added that he did not watch Durham while in the bank, but was positive Durham was there. In the light of this testimony, Durham suffered no prejudice from the asking of Question One and there was no abuse of discretion on the part of the trial judge in permitting it.

The remaining three questions of which the defendant complains were asked by the United States Attorney on a brief redirect examination of Wingo following his cross-examination by Durham's counsel. At the outset of the redirect examination, Wingo testified without any objection by defense counsel that he believed Durham knew his name as Wingo, and that before going to Charlotte he and Durham had used the name Jack Johnson to pass forged Mercury Distributing Company checks at many places over the state. Then Question Two was asked in the following exchange:

"Q. You did use Jack Johnson sometimes or did you use Jack Johnson all of the time?

"A. Well, Jack Johnson most of the time; and one or two other times we used another name. It was still a false name.

"Q. [*Question Two*] When you [he ?] knew your name was Wingo, you were using a false name?

"MR. POWELL: [*Counsel for Durham*] Objection.

"THE WITNESS: That's right.

"THE COURT: Objection overruled."

There is a difference of opinion between the attorneys as to whether Question Two was asked using the word "you" or the word "he", as shown in the brackets. However, in either event, no prejudice to Durham resulted from the question. In prior testimony, Wingo had clearly stated *both* that he used a false name to pass the checks and that he believed Durham knew his name was Wingo. Therefore, no new information was elicited by the question and Wingo's answer was merely repetitive.

The examination which included Questions Three and Four followed immediately and clearly related the above testimony to earlier testimony by Wingo on direct and cross-examination that, at

the suggestion of Durham and their two companions on the trip to Charlotte, he had written the forged check and opened the account in the Bank of Charlotte:

"Q. (By Mr. Murdock) You say you don't have any idea how many of these checks you and Durham cashed?

"A. No.

"Q. Before you went to Charlotte?

"A. No.

"Q. [*Question Three*] You say you all planned this together?

"A. Yes, sir. Well, I don't quite understand the question.

"MR. POWELL: Objection.

"THE COURT: Objection overruled.

"Q. [*Question Four*] (By Mr. Murdock) You say you all planned this, and they had asked you to write this check which was deposited in the Bank of Charlotte?

"A. Yes.

"MR. POWELL: Objection.

"THE COURT: Objection overruled.

"Q. (By Mr. Murdock) All right.

"A. They wanted me to write larger checks and under false pretenses to get money, and under the plan, they should have been larger checks than what they were because we were to have shared in it. It was just a false pretense to get money."

Again no resulting prejudice is apparent. The United States Attorney merely permitted his witness to restate prior testimony and eliminate an appearance of confusion which may have arisen as a result of certain testimony on cross-examination.

■■ On the facts inquired about in each of the four questions Wingo gave consistent answers and even elaborated on his previous testimony, as in the last answer quoted above. It is clear that no false answers were supplied by these questions, that Durham was not prejudiced, and that the District Court did not abuse its discretion in overruling objections to the questions. The record clearly supports a finding that Durham participated in the transportation of the automobile in interstate commerce with knowledge that it had been stolen.

Affirmed.