James Alan GELL, Plaintiff,

v.

TOWN OF AULANDER, Aulander Police Chief Gordon Godwin, in his official and individual capacities, Special Agent Dwight L. Ransome, in his individual capacity, William N. Farrell, in is individual capacity, Debra Graves, in her individual capacity, David Fred Hoke, in his individual capacity, and John and Jane Does 1–10, in their official and individual capacities, Defendants.

No. 2:05–cv–21–FL(1).

United States District Court, E.D. North Carolina, Northern Division.

Sept. 12, 2008.

David S. Rudolf, Rudolf, Widenhouse & Fialko, Charlotte, NC, for Plaintiff.

David Roy Blackwell, N.C. Dept. of Justice, Raleigh, NC, Gary H. Clemmons, Chesnutt, Clemmons, Thomas & Peacock, P.A., Susan P. Ellis, New Bern, NC, for Defendants.

## ORDER

LOUISE W. FLANAGAN, Chief Judge.

This matter came before the court on defendant's motion to strike materials attached to plaintiff's response in opposition to summary judgment. (DE # 217). For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff James Alan Gell was investigated, arrested, tried, and incarcerated for the 1995 murder of Allen Ray Jenkins. State court post-conviction proceedings resulted in reversal of plaintiff's conviction, and a new trial was ordered. At the subsequent trial, in February 2004, plaintiff was acquitted. Plaintiff thereafter brought suit against several parties involved in the original investigation and prosecution against him. The factual and procedural background of the case having been set forth in prior orders, the court dispenses with detailed recitation of the same here, and turns its attention immediately to consideration of the motion made on behalf of the only remaining defendant in the case, Special Agent Dwight L. Ransome.

## DISCUSSION

### A. Relevant Law

Summary judgment is appropriate, under Rule 56(c), "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court tests for a "genuine issue" through recourse to the relevant law, "view[ing] the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. 2505.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

In making a determination on a summary judgment motion, the court construes evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Nevertheless, judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." *Id.* at 251, 106 S.Ct. 2505. Evidence considered by the court must be admissible, and "airy generalities, conclusory assertions and hearsay statements [do] not suffice to

stave off summary judgment." *United States v. Roane,* 378 F.3d 382, 400–401 (4th Cir.2004), *cert denied by,* 546 U.S. 810, 126 S.Ct. 330, 163 L.Ed.2d 43 (2005).

Under Rule 56(e), an affidavit put forth to support or oppose summary judgment must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e). In addition, "unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir.1993).

The "nonmoving party" need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.* Nonetheless, evidence submitted in an inadmissible format must be otherwise admissible at trial. *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir.1996); *see also Geiserman v. MacDonald,* 893 F.2d 787, 793 (5th Cir.1990) ("Rule 56(e) requires the adversary to set forth facts that would be admissible in evidence at trial. Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless.") (citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 2727, at 156 (1983)).

Evidence submitted in opposition to a summary judgment motion must be based on personal knowledge. *Evans,* 80 F.3d at 962. "Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Fed.R.Evid. 602, Lay opinion testimony is allowed if the person is not testifying as an expert and the opinions or inferences testified to are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue and (c) not based on scientific,

technical or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701; *see also King v. Rumsfeld,* 328 F.3d 145, 153 (4th Cir.2003). Hearsay testimony may not be relied upon in support or defense of summary judgment. *Maryland Highways Contractors Ass'n v. Maryland,* 933 F.2d 1246, 1251 (4th Cir.1991), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 325 (1991).

### B. Analysis

Defendant moves the court to strike the affidavits or deposition testimony of eight individuals. Specifically, defendant urges the court to strike the "draft affidavit" of Peggy Moore and all attachments thereto (DE # 169, Ex. G, p, 2–7), the entire affidavits or parts thereof of Robert Blowe (DE # 166, Ex. D), Paula Brabble (DE # 167, Ex. E), Janelle Harris (DE # 168 Ex. F), Charles Moore (DE # 178, Ex. P), portions of the deposition testimony of Maynard Harrell (DE # 179, Ex. Q), and the cross-examination portions of the depositions of Larry Luke (DE # 165–2, Ex. C) and Benjamin Parker, Jr. (DE # 164, Ex. B). The court considers the testimony of each individual in turn.

### *Unsigned Affidavit of Peggy Moore*

Defendant moves to strike the unsigned "affidavit" of Peggy Moore attached to the signed and notarized affidavit of Jerry Waller. Jerry Waller is an investigator who works for Alan Gell. According to his affidavit, on December 18, 2007, he interviewed Peggy Moore at the Burger King in Windsor, North Carolina. Waller Aff., DE # 169, p. 1. Waller testified that he created a draft affidavit for Peggy Moore[1] at the interview and that she commented on but would not sign it. Defendant contends that any comments made by Peggy Moore are inadmissible hearsay. The court agrees.

■ "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). A review of the informa-

---

1. The court includes affiant's first name in order to distinguish from affiant Charles Moore.

tion contained in the draft affidavit shows that the affidavit would tend to support a theory of the case favorable to plaintiff. In other words, plaintiff offers the Peggy Moore affidavit "to prove the truth of the matter asserted." As such it is impermissible hearsay, and may not be considered in defense of summary judgment. *See, e.g., Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir.1996).

Plaintiff contends that the affidavit is admissible as evidence of Waller's testimony regarding the interview with Peggy Moore. It is evident, however, that Peggy Moore's unsigned affidavit relates to plaintiff's theory of the case; it is not merely offered to support Waller's otherwise insignificant assertion that he interviewed Peggy Moore.

Plaintiff also contends that, were Peggy Moore to testify as anticipated at trial, the draft affidavit would be admissible as impeachment material under Rule 613(b). Should Peggy Moore testify as forecast by plaintiff at trial, it is possible that, at that time, the unsigned affidavit might be admissible pursuant to Rule 613(b). That is not the situation before the court at this time, however. Currently the court is confronted with bona fide affidavit (Waller's) that seeks to enter into evidence the unsworn, unsigned affidavit of a third party which contains material that is offered in evidence to prove the truth of the matter asserted. Rule 613(b) only permits the use of prior inconsistent statements as impeachment evidence if "the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Fed.R.Evid. 613(b). Plaintiff offers no precedent of a court extending Rule 613(b) to apply to a summary judgment situation, where the witness and opposing counsel are not afforded these opportunities. Furthermore, as a court ruling on summary judgment is not to make credibility determinations regarding witness testimony, evidence offered solely for the purpose of impeachment would not be relevant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

■ The court therefore finds that the portion of Waller's affidavit that contains hearsay statements attested to by Waller but made by Moore is struck from the record for purpose of summary judgment. Specifically, the second sentence of paragraph three of Waller's affidavit is struck, and the second and third sentences of paragraph four are struck. The entire "draft affidavit" of Peggy Moore is struck. The interview notes attached to the Moore draft affidavit are, as noted by plaintiff, properly before the court as attachments to Peggy Moore's sworn and notarized affidavit submitted in support of summary judgment at DE # 88 and therefore are admissible and remain in evidence.

### Affidavit of Robert Blowe

Defendant argues that the affidavit of Robert Blowe should be struck for several reasons. Defendant contends it is a "sham" affidavit whereby plaintiff seeks to create a genuine issue of material fact by eliciting responses inconsistent with Blowe's previous statements, that it is not based on personal knowledge, and that it is not based on competent testimony because there is no indication that affiant is over eighteen years of age and because he has admitted to a lack of recall.

There are numerous materials that contain Blowe's accounts of his alleged sighting of decedent in April, 1995. Based on interview notes attached to his affidavit, Blowe was interviewed by law enforcement officers on Monday, April 17, 1995, Friday, July 28, 1995, and Tuesday, November 26, 2002. He testified at Gell's retrial. He testified by affidavit on September 17, 2007. On December 18, 2007, he signed the affidavit that defendant now seeks to have struck. Law enforcement notes from the aforementioned interviews and transcript of trial testimony are attached to the December 18, 2007, affidavit. Blowe Aff., DE # 166.

■ Defendant contends that Blowe's December 18, 2007, affidavit is a "sham" affidavit because it contradicts previous sworn testimony. The Fourth Circuit has "consistently held that a party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit."

*Hernandez v. Trawler Miss Vertie Mae, Inc.,* 187 F.3d 432, 438 (4th Cir.1999). An examination of the entirety of Blowe's testimony in context, however, shows that Blowe's December 18, 2007, affidavit provides details generally consistent with his prior sworn testimony. For example, consistently throughout, Blowe indicates that he was originally interviewed because he mentioned, in a store in Millenium, North Carolina, that "it hadn't been a week" before decedent's body was found that Blowe had seen decedent alive. *See, e.g.,* Dec. 18 Aff., ¶ 4 ("I knew it hadn't been a week since I seen the man and then I heard he was murdered."); Sept. 17, 2007 Aff. ¶ 5 (Blowe saw deceased "less than … a week before [deceased's] body was found"); Trial Trans, p. 913 ("I had spoke in the country store that when I heard he'd been murdered that 1 hadn't been a week ago seen the man [sic]") (attached to Dec. 18, 2007 Aff.). Defendant nonetheless argues that specific minor inconsistencies among Blowe's several affidavits and statements results in testimony that is "diametrically opposed" to the original affidavit and that in his most recent testimony Blowe "adopt[s] a new found tone of vagueness and circumspection" that is absent from his earlier testimony. Def't's Mem. Supp. Mot. Strike pp. 8–9.

The case law suggests that where a party by its behavior generates an issue of material fact through the production or manipulation of contradictory sworn testimony, a district court may strike related testimony when considering summary judgment. The Fourth Circuit has held that:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiffs testimony is correct.

*Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir.1984) (internal citation and quotation marks omitted); *see also, Rodriguez v.* *Smithfield Packing CO.,* 545 F.Supp.2d 508, 514 (D.Md.2008) (in the absence of a direct conflict between versions of testimony, affidavits need not be struck).

In the instant case it is apparent that inconsistencies and vagueness have more to do with the passage of time than with an objectively discernable attempt to opportunistically create a genuine issue of material fact. The original murder occurred in April, 1995. Blowe was interviewed then (in April, 1995), was reinterviewed in July, 1995 and again prior to Gell's second trial in November, 2002, testified at Gell's second trial and was reinterviewed more than once in 2007. pursuant to the instant action. There are numerous, mostly minor, inconsistencies among his various statements. Blowe has consistently admitted that he does not remember his sighting of decedent with perfect clarity. In the affidavit sought to be struck, Blowe is quite candid: "I can't remember now the date I last saw [decedent], or the day of the week. That was all too long ago." Dec. 18 Aff., ¶ 4.

■ To the extent that Blowe contradicts his own prior sworn testimony, he may be found less credible if the instant action proceeds to trial. Such credibility is a matter for the jury to determine, and "cannot be assessed on summary judgment." *Black & Decker Corp. v. United States,* 436 F.3d 431, 442 (4th Cir.2006): *see also Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir.1986) ("A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence. An opposing party's affidavit should be considered although it differs from or varies (from) his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility.") (quoting 6 Moore's Federal Practice para. 56.15(4) (2d ed.1985)); *Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 (7th Cir.2004) ("Credibility and weight are issues of fact for the jury, and we must be careful not to usurp the jury's role."). The court therefore finds that the December 18, 2007, affidavit of witness Blowe shall not

be struck on the basis that it is a sham affidavit.

Defendant next presents a laundry list of miscellaneous reasons why portions of Blowe's affidavit should be struck. Defendant argues that paragraph three of Blowe's affidavit is not based on personal knowledge, apparently because he admits that he cannot remember what he said at the 2002 retrial. Blowe's knowledge of his prior testimony is immaterial, however, as Blowe does not in his affidavit purport to attest to the content of his prior testimony, merely to its veracity. Blowe offers independent support for his personal knowledge of the veracity of his testimony: "I told the truth because I swore to tell the truth, and because I knew that was what I should do." Blowe Aff. ¶ 3. Blowe's own testimony permissibly supports a finding that he has personal knowledge of the facts in dispute. Fed.R.Evid. 602.

Defendant also argues the phrase "I have read pages 911–918 of what I was told was what I said at trial," constitutes inadmissible hearsay. Blowe Aff. ¶ 3. However, this statement does not purport to assert "what another unknown individual told Blowe about what Blowe said at Gell's 2004 trial." Deft.'s Mem. Supp. Mot. Strike, p. 11. It is offered to show what Blowe understood the document he read prior to giving his affidavit to be, and not to "prove the truth of the matter asserted" by the unknown individual, and thus is not hearsay. Fed.R.Evid. 801(c).

Defendant next contends that paragraph five of Blowe's affidavit should be struck because it is "factually incorrect, vague, and speculative." Deft.'s Mem. Supp. Mot. Strike, p. 11. Defendant contends that Blowe testified that he was interviewed by "the police" but that Blowe was in fact interviewed by the North Carolina State Bureau of Investigation ("SBI"). Presumably this is the portion alleged to be factually incorrect. The court finds however, that it is not unreasonable and arguably not counter factual that affiant referred to the state law enforcement agency formally known as the "North Carolina State Bureau of Investigation" by the informal shorthand vernacular of "the police." Further, at summary judgment the court is not in the position of assessing

Blowe's affidavit for factual inaccuracies. At this stage, rather, the court construes evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

Defendant also argues that Blowe testified that a document "did not say" something where defendant contends that a document "cannot 'say' anything. . . . A witness is not competent to testify what it does not say, but may only read what the document states." Deft.'s Mem. Supp. Mot. Strike p. II. Specifically, defendant objects to Blowe's assertion that the July 28, 1995, reinterview report does not refer to any statement he may have made about having seen Jenkins within a week of the discovery of the body. Statements concerning what was included or not included in these reinterview reports are directly relevant to plaintiff's fabrication of evidence claim. Based on the instant facts, the court sees no reason why affiant may not describe content lacking from a document.

Defendant notes the final two sentences of paragraph five in which Blowe testified that "I see that it doesn't say anything about me saying that it hadn't been a week that 1 had seen Jenkins before his body was found. I don't know why they didn't put that in there." Blowe Aff. ¶ 5. Defendant objects to Blowe's statement "I don't know why they didn't put that in there" on the basis that it is speculative. Defendant cites case law from the Seventh Circuit in which the court held that "statements outside the affiant's personal knowledge or statements that are the result of speculation or conjecture or merely conclusory do not meet [the requirements of Rule 56]." *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir.1999). Blowe's statement "I don't know why they didn't put that in there" does not violate any of the above-mentioned prohibitions. It is based directly on Blowe's personal knowledge in that it attests to a lack thereof. There is no speculation inherent in the bare statement, nor is it conclusory. Defendant may be attempting to suggest that the downstream effect of Blowe's statement will be to cause speculation by a fact finder, but the court need not concern itself with that inquiry here. Although "airy generali-

ties" and "conclusory assertions" are prohibited on summary judgment, *Roane*, 378 F.3d at 400–401, Blowe's bare statement of his lack of personal knowledge is not.

■ Finally, defendant argues that Blowe's affidavit should be struck because Blowe is not "competent." Defendant contends that neither the Blowe, Brabble, Harris, Charles Moore or Peggy Moore affidavits offer an "affirmative showing" that these witnesses are competent. Defendant defines competent as "over 18 years of age, and not suffering under any physical or mental disability, which in any way impairs the affiant's ability to recall or state the facts set forth in the affidavit." Defendant offers no authority for this definition, nor is the definition supported by the text of the Rule itself. Rule 56(e) provides in relevant part:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e). The Rule's requirement is that the affiant be "competent to testify *on the matters stated.*" *Id.* (emphasis added). The Rule contains no age requirement, nor does it automatically preclude testimony from a witness whose memory is called into question. *See, e.g., Tippens*, 805 F.2d at 953–54. Indeed, were perfect recall required for competency, few if any witnesses would survive scrutiny under Rule 56(e). On the matters stated here, all of the above mentioned witnesses appear competent to testify. All were interviewed at or around the time of decedent's murder (with the exception of Charles Moore, who was plaintiff Gell's attorney at the original criminal trial), and all were reinterviewed at least once by law enforcement officials. Defendant's argument for a strict affirmative showing of age and recall is supported by neither the Rule nor the relevant case law. *See Barthelemy v.*

*Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir.1990) ("That Rule 56(e)'s requirements of personal knowledge and competence to testify have been met may be inferred from the affidavits themselves."). For the aforementioned reasons, with respect to allegations of lack of competency, affiants Blowe, Brabble. Harris, and Charles Moore are found competent to testify in these affidavits and within the context of Rule 56. The "draft affidavit" of Peggy Moore having been struck for other reasons, the court need not consider it further here. For these and other reasons provided above, that portion of defendant's motion requesting that the December 18, 2007, affidavit of Robert Blowe be struck is denied.

### Affidavit of Paula Brabble

Defendant argues that the December 18, 2007, affidavit of Paula Brabble (DE # 167, Ex. E) should be struck for several reasons. Here, defendant assails the testimony of Brabble on basis that the affidavit is a sham one. After careful consideration of this argument and the affidavit of Paula Brabble in light of her prior statements, for the same reasons the court discarded the attack on Robert Blowe's affidavit, the court will not strike Brabble's affidavit as sham.

Defendant also asserts without providing detail or specific argument that Brabble's affidavit is not based on personal knowledge, and for this reason, too, should be struck. In the affidavit, Brabble asserts that she testified truthfully at the Gell trial, describes details of the first interview with law enforcement, and makes statements about a previous affidavit she signed in May, 2007. She was physically present at each event of which she testifies. The assertion that she is without personal knowledge of these events is without merit. For all of these reasons, that portion of defendant's motion requesting that the December 18, 2007, affidavit of Paula Brabble be struck is denied.

### Affidavit of Janelle Harris

Defendant urges the court to strike the December 18, 2007, affidavit of Janelle Harris (DE # 168, Ex. F). Defendant attacks the affidavit of Janelle Harris also on grounds that it is a sham one. After careful

consideration of this affidavit, in light of her prior statements, again, for the same reasons the court did not strike the other affidavits attacked here as sham, the court will not strike Harris's affidavit on this basis.

■ Defendant asserts generally that Harris lacks the personal knowledge requisite for Rule 56(e). In her affidavit, Harris repeatedly emphasizes the fact that she cannot recall with any clarity the events surrounding decedent's murder. *See, e.g.,* ¶ 1 ("My memory is not what it used to be. I can hardly remember what happened yesterday, let alone four or five years ago."); ¶ 3 ("I can't remember what I said in 1995, or in 2002 or 2003."). Almost the entire affidavit represents a disclaimer with respect to her ability to recall what she told investigators at various times. To the extent there is any factual content, however, Harris provides details regarding her initial impression when she heard decedent was found dead, and makes statements about a previous affidavit she signed in the case. The subject of her testimony is her own memory, her own statements, and her recent affidavit in the instant case. The argument that she is without personal knowledge is without merit. The impact of her lack of recall goes to credibility and weight, which are matters for the jury. *Tippens,* 805 F.2d at 954. For this and other reasons provided above, that portion of defendant's motion urging the court to strike the affidavit of Janelle Harris is denied.

### Affidavit of Charles Moore

Charles Moore was plaintiff Gell's lawyer at the original trial in 1998. Defendant urges striking Charles Moore's affidavit available at DE # 178, but there are several items attached at that docket entry, two of which are affidavits. The first item is an affidavit from Moore dated July 23, 2001. The second is an affidavit from Moore dated January 24, 2008. The third item is an excerpt from the October 4, 2007, deposition of Charles Moore. There are several other materials attached, but it is apparent from the text of defendant's motion that it urges consideration of the most recent affidavit, dated January 24, 2008.[2]

Defendant first urges the court to strike the affidavit because it is not based on personal knowledge and Moore is not competent to testify. In the affidavit, Charles Moore testified regarding events at which he was present and in which he personally participated; he therefore cannot be said to lack personal knowledge. For the reasons described above, Moore has adequately demonstrated his competence to testify on the matters stated, as required by Rule 56.

Defendant further urges the court to consider Charles Moore's testimony in light of Rule 403. *See* Deft.'s Mem. Supp. Mot. Strike p. 12. In paragraph five, Moore testifies that, after he had interviewed a witness for the 1998 trial, defendant Dwight Ransome aggressively confronted him at the courthouse:

> Dwight got very close to me, he was in my face, pointing his finger at me, and told me in a loud voice "you are going to stop harassing my witnesses, they don't want to talk to you, and they don't have to talk to you!" I asked Dwight if he was referring to Linwood. Dwight said "you are going to stop this or you are going to pay a price!" Dwight was aggressive and threatening to me. I felt he was trying to intimidate me into not speaking to those witnesses.

C. Moore Jan. 28, 2008, Aff. ¶ 5. Defendant contends that the above passage is irrelevant to the issue of whether Ransome fabricated written statements of witnesses, and that, regardless of relevance, the prejudicial effect of the above statement clearly outweighs its probative effect.

In his motion for summary judgment, defendant argues that, in order for plaintiff to prevail, he must show that Ransome deliberately used evidence that he fabricated or knew to be false. Deft.'s Mot. Supp, S.J. p. 6. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination

---

**2.** The court has also considered the July 23, 2001 affidavit of Charles Moore and to the extent consideration of that affidavit is urged, the court finds that Moore demonstrates personal knowledge of the matters at issue and competency to testify thereon.

of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. Defendant Ransome's allegedly aggressive behavior in response to plaintiff attorney's contact with a witness could reasonably shed light on his alleged fabrication of witness testimony. The evidence is relevant as defined in Rule 401.

Defendant also argues that the last two sentences of paragraph five are "mere conjecture" and therefore not permissible in a Rule 56 affidavit. The two lines are admissible under Rule 701, however, as "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701. Whether or not Charles Moore's impression is credible and supported in the context of other evidence is a determination for the jury.

■ Finally defendant argues that, even if admissible, the prejudicial effect of the statements outweighs their probative value. There is no doubt that the statements may have some prejudicial effect, but "[a]ll relevant evidence is 'prejudicial' in the sense that it may prejudice the party against whom it is admitted. Rule 403, however, is concerned only with 'unfair' prejudice." *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1134 (4th Cir.1988). Here, affiant's statements are probative of an essential element of plaintiff's case. Defendant does not specifically allege any prejudice that would attach other than the statements' probative effect, and the court does not find such unfair prejudice here. For this and other reasons provided above, that portion of defendant's motion urging the court to strike the affidavit of Charles Moore is denied.

*Deposition Testimony of Maynard Harrell*

For the same reasons given by defendant with respect to Charles Moore's affidavit, above, defendant argues that an excerpt of Maynard Harrell's deposition testimony available at DE # 179, Ex. Q, pp. 5–7, should be struck as irrelevant and unduly prejudicial. In the deposition excerpt, Harrell re-

counts an encounter between himself and defendant Ransome at Gell's second trial. Although Harrell has a very limited memory of the incident, defendant Ransome allegedly said "we're gonna kick their ass just like we kicked your ass." *Id.* p. 8. In his motion for summary judgment, defendant states he had no motive to fabricate evidence. Deft.'s Mot. Supp. S.J. p. 9. The allegations in Harrell's deposition testimony are probative of the possible existence of such a motive. For this reason, and the same reasons given above with respect to the Charles Moore affidavit, the court finds that Harrell's testimony is relevant, probative, and not unduly prejudicial. That portion of defendant's motion urging the court to strike the deposition testimony of Maynard Harrell is therefore denied.

*Cross Examination Portions of the Deposition Testimony of Larry Luke and Benjamin Parker*

Defendant's arguments in support of striking deposition excerpts from Larry Luke and Benjamin Parker are identical and therefore the court addresses them in tandem. Defendant contends that the deposition testimony of these two individuals is so riddled with impermissibly leading questions that the court should, in its discretion, strike them entirely, or strike portions thereof. Defendant specifically points to DE # 165, Ex. C pp. 2–13 (the Luke Deposition) (page numbers refer to docket entry pagination) and DE # 164, Ex. B pp. 2–7 (the Parker Deposition). An examination of the referenced excerpts leaves no doubt that leading questions were asked and answered. The question for the court, therefore, is whether this was permissible under the circumstances.

Rule 611(c) governs leading questions:
Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.
Fed.R.Evid. 611(c).

Defendant contends that, in the instant case, the cross examination of these two par-

ties was performed not by the attorney for an adversarial party but rather by the attorney for a client who will benefit at trial from the testimony of these two witnesses. Because Luke and Parker will testify favorably for plaintiff at trial, says defendant, they are not "hostile" or "adverse" witnesses and the leading questions were inappropriate.[3] Defendant argues that in the witness/party configuration presented at the Luke and Parker depositions, the roles were reversed and leading questions would have been permissible on direct examination, but not on cross examination. Defendant cites Eight Circuit case law in support.

Plaintiff argues that neither Luke nor Parker are adverse parties but rather are "uninvolved, average citizens, who have been dragged into this matter" and "were . . . discovered by Defendant during the initial canvas." Pltf.'s Mem. Opp. Mot. Strike, pp. 12–13. As such Luke and Parker are not inherently adverse to either party and therefore no role reversal occurred with respect to Rule 611(c).

■ The case law is unsettled, but one thing is clear: whether or not to allow such questioning is within the discretion of the trial court. "[T]he extent to which the use of leading questions may be indulged or limited is a matter primarily for the discretion of the trial judge and an appellate court will intervene only if there is a clear abuse of discretion. Generally, abuse of discretion is not found in the absence of prejudice or clear injustice to the defendant." *United States v. Durham*, 319 F.2d 590, 592 (4th Cir.1963) (collecting cases); *see also United States v. Oladokun*, 166 F.3d 336, 1998 WL 802013 *2 n. 3 (4th Cir.1998) (unpublished) ("the rule was deliberately drafted using suggestive rather than mandatory language in light of the broad discretion trial judges are afforded in this area"). The Eighth Circuit case cited by defendant illustrates this rule. Providing full context to the quotation cited by defendant, the case reads:

Alpha argues that the district court erred in allowing Motorola to use leading questions in the cross-examination of Robert Bauer, a Motorola employee, because Bauer had been called by Alpha as a witness identified with an adverse party. We disagree.

Fed.R.Evid. 611(c) provides:

Leading questions should not be used on the direct examination of a witness . . ., Ordinarily leading questions should be permitted on cross-examination. When a party calls a . . . witness identified with an adverse party, interrogation may be by leading questions.

Generally, when a witness identified with an adverse party is called, the roles of the parties are reversed. Leading questions would be appropriate on direct examination but not on cross-examination. *Nevertheless, a district court must be given great discretion in governing the mode of interrogating witnesses.* We hold that the district court did not abuse its discretion in allowing Motorola to use leading questions during the cross-examination of Bauer.

*Alpha Display Paging, Inc. v. Motorola Communications & Electronics, Inc.,* 867 F.2d 1168, 1171 (8th Cir.1989) (emphasis added). In *Alpha Display,* the Court of Appeals sanctioned just such questioning as has occurred in the instant case, where a witness arguably[4] favorable to plaintiff but called by defendant is asked leading questions on cross-examination. The Eighth Circuit, however, did not approve a rule of law prohibiting such activity but rather found no abuse of discretion by the trial court. *Id.; see also Ardoin v. J. Ray McDermott & Co., Inc.,* 684 F.2d 335, 336 (5th Cir.1982) ("A trial court therefore has power to require a party cross-examining a friendly witness to employ non-leading questions. The decision whether to do so, however, lies within the district court's discretion.").

■ In order to properly exercise its discretion here, the court will consider the pur-

---

**3.** Defense attorney present at both depositions objected numerous times to leading questions.

**4.** As the court decides the matter on the basis of efficiency, and in its discretion, this description

of the roles played by the various participants at deposition should not be considered to forecast a ruling on such testimony or questioning should the case proceed to trial.

pose behind the rule. Rule 611(a) requires the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Fed.R.Evid. 611(a). The depositions having been completed, time is not at issue here, nor, from the record, is harassment, thus items 2 and 3 of Rule 611(a) are not material. The court's role rather is to control the questioning, or in this case to determine the admissibility of previous questioning, in order to promote the "effective ... ascertainment of the truth[.]" Fed.R.Evid. 611(a). Put differently, the court must ask itself if, viewed in context, the leading questions would hinder the ultimate goal of truth seeking.

There is no doubt that leading questions can be injurious to truth seeking. "The evil to be avoided is that of supplying a false memory for the witness." *United States v. Durham*, 319 F.2d 590, 592 (4th Cir.1963) (citing 3 Wigmore, Evidence § 769 (3d ed.1940)). In the instant case, however, the leading questions have been asked primarily upon the basis of previous trial testimony and interview notes. For example, pages 2–7 of the Parker deposition to which defendant objects are primarily a review of Parker's testimony at plaintiff Gell's previous criminal trial.[5] Pages 2–13 of the Luke deposition to which defendant objects are primarily a review of a calendar of the month of April, 1995. notes of the SBI interview of Luke, and Luke's prior trial testimony.

Defendant frames this issue thusly: "[r]educed to its essence, the simple inquiry is whether this Court would have allowed Plaintiff's blatantly leading cross examination of Luke and Parker at a trial of this matter." Deft.'s Rep. Mem. Supp. Mot. Strike p. 7. Unfortunately, the inquiry before this court is not quite that simple. Not having been present at the deposition, the undersigned had no opportunity to rule on whether or not the leading questions were permissible. Certainly, there were leading and potentially suggestive questions posed at both depositions. The court however, having considered each cross examination in minute detail, and in the context of the universe of evidence before it, finds that the few questions at issue do not violate Rule 611's mandate that the court control the mode of questioning in order to "make the interrogation and presentation effective for the ascertainment of the truth." Fed.R.Evid. 611(a). For this reason, that portion of defendant's motion urging the court to strike the deposition testimony of Luke and Parker or parts thereof is denied.

## CONCLUSION

For the reasons given, defendant's motion to strike is GRANTED in part and DENIED in part as described in the text of the order above.

---

**5.** Further, defense counsel at deposition had the opportunity immediately following cross examination to re-direct Parker and remedy any potential harm from the leading questions asked. *See* Depo. Excerpt, DE # 164 p. 8–10.