**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4136**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIAM BILL F. ADAMS, JR., a/k/a Bill F. Adams, a/k/a William F. Adams,

Defendant – Appellant,

and

TOMMY SKEENS; JERRY SKEENS,

Petitioners.

**No. 15-4137**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHN B. WARD,

Defendant – Appellant,

and

TOMMY SKEENS; JERRY SKEENS,

Petitioners.

Appeals from the United States District Court for the Western District of Virginia, at Abingdon. James P. Jones, District Judge. (1:12-cr-00044-JPJ-PMS-1; 1:12-cr-00044-JPJ-PMS-5)

Submitted: December 22, 2015          Decided: January 5, 2016

Before WILKINSON and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Timothy J. LaFon, CICCARELLO, DEL GIUDICE & LaFON, Charleston, West Virginia; Michael A. Bragg, BRAGG LAW, PLC, Abingdon, Virginia, for Appellants. Anthony P. Giorno, United States Attorney, Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In these consolidated appeals, William "Bill" F. Adams and John B. Ward appeal their convictions for conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (2012), and structuring of currency transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324 (a)(3) (2012), contending the evidence was insufficient to sustain their convictions. Additionally, Adams and Ward claim that the Government did not prove a single conspiracy, but actually presented evidence of multiple conspiracies. Adams also challenges the district court's rulings on evidentiary matters and the Government's use of leading questions. Ward also challenges his conviction on the basis that the financial structuring committed by his coconspirators was not reasonably foreseeable to hold him criminally liable under the Pinkerton[*] doctrine.

We affirm.

## I.

A jury convicted Adams and Ward of conspiring to defraud the United States and of multiple counts of structuring currency transactions to evade reporting requirements. The district

---

[*] Pinkerton v. United States, 328 U.S. 640 (1946).

3

court sentenced Adams and Ward to a 36-month prison term for each offense, running concurrently.

These crimes arose out of a check-cashing scheme that involved coal mining companies and mine supply businesses located in Virginia and West Virginia. Under this scheme, mine suppliers provided false invoices to certain mining companies, and the companies paid the suppliers with a check. In return, the mine suppliers paid ninety percent of the check amount in cash to the mining company, keeping ten percent as its fee. This scheme allowed the mining companies and their owners to avoid payment of income tax on the cash received and benefit from fictitious business tax deductions.

At the end of the Government's case in chief and at the end of the trial, Adams and Ward moved the district court for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Adams and Ward also moved the district court for a new trial pursuant to Federal Rule of Criminal Procedure 33, arguing the evidence presented at trial supported multiple conspiracies (rather than the charged single conspiracy) and was highly prejudicial, the Government improperly presented its case with leading questions, the district court erred when it limited the testimony of Adams' expert witness, and the case lacked sufficient evidence to support the verdicts. Finding sufficient

4

evidence for the convictions and no error, the court denied the motions.

## II.

### A. Sufficient evidence supports the conspiracy and structuring convictions

We review de novo the denial of Adams' motion for judgment of acquittal. United States v. Green, 599 F.3d 360, 367 (4th Cir. 2010). Viewing the evidence in the light most favorable to the Government, we must determine whether the conviction is supported by "substantial evidence," where "substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Young, 609 F.3d 348, 355 (4th Cir. 2010).

Substantial evidence supports the jury's finding that Adams and Ward participated in the conspiracy alleged in Count I of the superseding indictment. To establish a conspiracy under § 371, the Government must prove (1) an agreement between two or more people to commit a crime, and (2) an overt act in furtherance of the conspiracy. United States v. Cone, 714 F.3d 197, 213 (4th Cir. 2013). A single conspiracy exists where there is one overall agreement, or one general business venture. United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988). The government can prove a single conspiracy by direct or

5

circumstantial evidence that a defendant knew its "essential object" by demonstrating a "tacit or mutual understanding" between the defendants and other conspirators, even where the connection is slight. United States v. Hackley, 662 F.3d 671, 679 (4th Cir. 2011).

In this case, the evidence supports a single conspiracy — to defraud the United States – through the agreement made among Ward, Adams, and others, and their numerous overt acts involving various cash transactions. The Government presented evidence to establish a single conspiracy among bookkeepers, coal mine operators, and sellers of cash located on and around the border of West Virginia and Virginia. The conspirators, including Adams and Ward, worked together to ensure that the coal mine operators maintained a large supply of cash to conduct business in such a way as to avoid taxes, to create paperwork to hide the movement of untaxed cash through their businesses, and to make sure their scheme went undetected.

To prove this conspiracy charge, the Government presented substantial written evidence in the form of handwritten notes on timesheets, the general ledgers of three mining companies affiliated with Adams and Ward, invoices, and records of the checks to pay those invoices. The Government also presented its case through the testimony of numerous witnesses who spoke about

Ward's and Adams' working relationship, and their connection to the cash suppliers involved in the conspiracy.

The district court also instructed the jury on a multiple-conspiracy theory of defense to support Adams' and Ward's argument that they were, at most, members of separate and uncharged conspiracies. The jury thus could have found the existence of multiple, separate conspiracies instead of one overarching conspiracy. Nevertheless, the jury found Adams and Ward guilty of the conspiracy charge. Accordingly, the evidence presented at trial supports a single conspiracy, and the district court did not err in denying the motions for judgment of acquittal or new trial.

Substantial evidence also supports the jury's finding that Adams and Ward structured currency transactions to evade reporting requirements. Pursuant to 31 U.S.C. § 5324(a), a person is not permitted to structure currency transactions in such a way to avoid federal reporting requirements. The government must prove three elements to support a conviction for this type of structuring: (1) the defendant knowingly engaged in structuring; (2) the defendant knew of the reporting requirements under federal law; and (3) the purpose of the transaction was to evade the requirements. United States v. $79,650.00 Seized from Bank of Am. Account Ending in 8247 at Bank of Am., 7400 Little River Tpk., Annandale, Va., 650 F.3d

7

381, 384 (4th Cir. 2011) (citing without criticism the instructions of the trial judge); see also United States v. MacPherson, 424 F.3d 183, 189 (2d Cir. 2005).

The aiding and abetting statute, which is also referenced in the structuring counts, provides "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal," and "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2 (2012). Thus, even if Adams and Ward did not make the structured withdrawals of cash themselves, getting the cash providers to do so for them makes them equally as culpable.

The record makes clear that the Government offered sufficient evidence at trial from which a reasonable juror could have found Adams and Ward guilty of structuring. First, Adams and Ward routinely obtained cash in an amount of $10,000 or less. Second, after the bank submitted one CTR each for Adams and Ward, they kept their transactions under $10,000. Two cooperating witnesses involved in the scheme testified that they purchased cash in order to avoid paying taxes and triggering bank reporting requirements. From this evidence, the jury could infer Adams and Ward knew about the reporting requirements and

8

sought to avoid them. Moreover, the attempt to hide illegal activity is itself evidence that they knew their conduct was illegal. United States v. Beidler, 110 F.3d 1064, 1069 (4th Cir. 1997). Finally, the third element—that the purpose of the transactions was to avoid the reporting requirement—is established by the same evidence that satisfied the second element. Beidler, 110 F.3d at 1068-69. Adams and Ward could have withdrawn cash in amounts greater than $10,000, but they instead chose to go through the cash providers. The record therefore contains sufficient evidence to uphold the structuring convictions.

**B. The district court did not abuse its discretion when ruling on evidentiary matters or leading questions**

"This Court reviews evidentiary rulings for abuse of discretion." United States v. Hill, 322 F.3d 301, 304 (4th Cir. 2003).

Federal Rule of Evidence 404(b) prohibits using evidence of a crime, wrong, or other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Adams' argument concerning alleged Rule 404(b) evidence relates to his argument that the Government improperly presented evidence of multiple conspiracies. Specifically, Adams argues that the Government's Rule 404(b) Notice "shows that the

9

presentation of evidence . . . as to his personally structured transactions . . . was a separate crime."

Because Rule 404(b) applies to other crimes, wrongs, or acts, it does not apply if the proponent offers evidence of the charged act itself. United States v. Lighty, 616 F.3d 321, 352 (4th Cir. 2010). Here, the Government offered evidence of Adams' structured transactions and cash wages, not evidence of "other crimes." These acts were intrinsic to the conspiracy charge and the structuring counts. Indeed, the district court and counsel briefly discussed this issue when preparing jury instructions, and no one objected to removing the Rule 404(b) instruction. Rule 404(b) thus does not extend to these intrinsic acts, which are not "other acts" and were not offered to prove Adams' propensity to commit the charged offenses. As a result, the district court did not abuse its discretion or err when it admitted this evidence.

Adams also contends the district court erred when it limited testimony by Dr. Robert Rufus, a certified public accountant, because Federal Rule of Evidence 702 allows for testimony by a person who is an "expert by knowledge, skill, experience, training or education" as long as "the testimony is based on sufficient facts or data." Adams further contends the only prohibition on expert testimony in criminal cases is that "an expert witness must not state an opinion about whether the

10

defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). Because Rufus did not plan to testify as to the mental state or condition of the defendant, Adams argues his testimony should not have been limited. Adams also argues that Rufus' testimony would have impeached Kermit Wiley, a mining company supplier who testified to his provision of false invoices for companies and other involvement in the conspiracy, and the denial of that testimony prejudiced Adams and constituted clear error.

A review of the record shows the district court properly excluded the chart and potential corresponding testimony in accordance with Rule 1006. The Rule states, in relevant part, "The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. Thus, Rule 1006 permits the admission of charts into evidence as a surrogate for underlying voluminous records that would otherwise be admissible into evidence. United States v. Janati, 374 F.3d 263, 272 (4th Cir. 2004).

Here, the district court found that the chart did not summarize voluminous records. Additionally, the chart focused on a Memorandum of Interview documenting certain out-of-court statements made by Kermit Wiley. At no point during his

testimony, however, did Wiley discuss the details set forth in that Memorandum. Thus, the chart relied on inadmissible evidence.

The district court also concluded that the chart and proposed testimony did not amount to "expert" opinion evidence. The district court surmised that Rufus intended to recount inadmissible testimony of another witness for the purpose of impeaching that witness' testimony. This is not an "expert" opinion based on otherwise inadmissible facts or data for purposes of Rule 703. See United States v. Johnson, 587 F.3d 625, 635 (4th Cir. 2009) ("It is nonetheless appropriate for district courts to recognize the risk that a particular expert might become nothing more than a transmitter of testimonial hearsay and exercise their discretion in a manner to avoid such abuses."). Therefore, the district court did not abuse its discretion when it excluded Rufus' chart summarizing the Kermit Wiley Transactions.

This court reviews rulings on the use of leading questions for an abuse of discretion. United States v. Durham, 319 F.2d 590, 592 (4th Cir. 1963). "Generally, abuse of discretion is not found in the absence of prejudice or clear injustice to the defendant." Id.

Adams argues the "large number of leading questions . . . substantially affected [his rights] and the same constitutes

12

clear and prejudicial error." Adams does not identify any individual questions or objections that he disputes. Rather, his argument seems to be that taken altogether, the Government presented its case through leading questions "without actually getting any substantive testimony from the witnesses."

Nevertheless, a review of the record shows that during the Government's case in chief, Adams' counsel made numerous objections to leading questions, some of which the district court sustained, and some of which the court overruled. Adams has not explained, nor does the record show, how prejudice occurred or how the district court abused its discretion in ruling on these objections. Accordingly, the district court did not abuse its discretion in ruling on the objections, nor did its rulings result in prejudice to Adams.

**C.     The coconspirators' financial structuring was reasonably foreseeable to hold Ward accountable under the Pinkerton doctrine.**

The Pinkerton doctrine imposes vicarious liability on a coconspirator for the substantive offenses committed by other members of the conspiracy when the offenses are during and in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 646–47 (1946); see also Nye & Nissen v. United States, 336 U.S. 613, 618 (1949) (stating Pinkerton "held that a conspirator could be held guilty of the substantive offense even though he did no more than join the conspiracy, provided that

13

the substantive offense was committed in furtherance of the conspiracy and as a part of it"); accord United States v. Chorman, 910 F.2d 102, 110 (4th Cir. 1990).

Ward argues there "is no evidence that Ward himself engaged in any structured withdrawal transaction," and "there is not evidence that Ward was aware that cash withdrawals over $10,000 had to be reported."

Ward's argument is without merit. In this case, a significant portion of the conspiracy involved purchasing large amounts of cash and falsified invoices to hide the movement of cash. Therefore, it was reasonably foreseeable that the cash sellers would undertake methods to avoid detection when acquiring the cash.

Furthermore, in accordance with Pinkerton, the jury could have convicted Ward and Adams based solely on the substantive structuring offenses committed by their coconspirators in the course of and in furtherance of the conspiracy. The district court properly instructed the jury on this issue. Cooperating witnesses who pleaded guilty to participation in the conspiracy testified that they had structured cash out of financial institutions to avoid reporting requirements, and that they sold this structured cash to Adams and Ward. Whether Adams or Ward personally made the withdrawals is irrelevant. The evidence is sufficient that Ward used the structured cash to further a

14

conspiracy and defraud the United States, and the possibility that cash providers might have structured the cash that they were selling to Ward and Adams was reasonably foreseeable.

## III.

Viewing the evidence in the light most favorable to the Government, we conclude that a rational jury certainly could have found substantial evidence beyond a reasonable doubt to convict Adams and Ward of conspiracy to defraud the United States, and for the substantive counts of structuring currency transactions to evade reporting requirements. We further conclude that the district court did not abuse its discretion or violate Federal Rule of Evidence 404(b) when it admitted evidence intrinsic to these crimes. Similarly, the district court did not abuse its discretion when it excluded a chart and limited the testimony of Dr. Robert Rufus regarding certain transactions and inadmissible evidence, nor did it abuse its discretion when it ruled on objections to leading questions.

Accordingly, we affirm the district court's judgments. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED

15